IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| CF ADVANCE, CORP., | § | |
| | § | Case No. 6:18-cv-01770-CEM-DCI |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| ZACHARIAH THOMAS THRASHER, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO LIABILITY FOR
PRE-ISSUANCE DAMAGES AND ABSOLUTE INTERVENING RIGHTS**

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF FACTS ..................................................................................... 2

  A.  Procedural History ............................................................................................. 2

  B.  Reexamination of the '291 Patent ..................................................................... 3

  C.  Reexamination of the '627 Patent ..................................................................... 8

III.   LEGAL PRINCIPLES ......................................................................................... 12

  A.  Summary Judgment Standard ......................................................................... 12

  B.  Substantive Amendments Bar Pre-Issuance Damages and Trigger
      Absolute Intervening Rights .......................................................................... 12

    1.  Pre-issuance damages ................................................................................. 12

    2.  Absolute intervening rights ........................................................................ 13

    3.  "Substantially identical" claims ................................................................ 13

IV.    SUBSTANTIVE CLAIM AMENDMENTS PRECLUDE LIABILITY PRIOR TO
     ISSUANCE OF THE REEXAMINATION CERTIFICATES ......................... 14

  A.  Defendant Substantively Amended The Claims Of Each Patent During Reexamination . 15

    1.  Defendant Substantively Amended Claim 1 of the '291 Patent ................ 15

    2.  Defendant Substantively Amended Claim 1 of the '627 Patent ................ 18

  B.  Plaintiff Has No Liability To Defendant For Actions Prior to Issuance Of The
      Reexamination Certificate ............................................................................. 20

  C.  Absolute Intervening Rights Limit Defendant's Damages Post-Issuance ....... 22

V.     CONCLUSION .................................................................................................... 22

# I.    **INTRODUCTION**

CF Advance Corp. ("CF" or "Plaintiff") brought this case to clear a cloud on its ability to sell its Jeep Grand Cherokee and Jeep Commander door handle replacement kits caused by Defendant's accusations that CF's products infringe U.S. Patent No. 9,126,291 ("the '291 patent") and 9,744,627 ("the '627 patent").  However, CF has no liability to Defendant for any purported infringement of either patent as a result of changes made to the claims of both patents during reexamination of these patents by the United States Patent and Trademark Office ("USPTO").

When a patentee substantively amends a patent's claims by altering the claims' scope during reexamination, the patent law imposes several limitations on the patentee. See 35 U.S.C. §§ 252, 307(b).  The first limitation, referred to as a bar on "pre-issuance damages," precludes the patentee from recovering damages prior to the date of issuance of the patent's reexamination certificate. The second limitation, referred to as "absolute intervening rights," precludes the patentee from recovering damages for alleged infringement after the date of issuance of the patent's reexamination certificate with respect to any product already in existence in the United States prior to the issuance of the reexamination certificate.  Both limitations are issues of law for the Court.

The '291 and '627 patents underwent reexamination by the USPTO. During reexamination, the Examiner rejected all of the originally-issued claims, determining that each original claim was unpatentable in view of prior art that had not been considered by the USPTO during the initial prosecution of the patents. To overcome the Examiner's rejections in the reexaminations, Defendant substantively amended each independent claim of the '291 and '627 patents, narrowing the scope of each patent claim by adding new, additional claim limitations to the original independent patent claims.  These amendments narrowed the scope of the original patent claims to avoid the prior art cited in the Examiner's rejections. The Examiner then allowed the amended

claims based on Defendant's narrowing amendments.  The claim language and the prosecution history of the reexaminations of the '291 and '627 patents clearly show a substantive change to the scope of the independent claims was made by Defendant.  As a result, Defendant is barred from recovering pre-issuance damages as to each asserted patent.  Additionally, CF has absolute intervening rights as to all products in existence prior to the date of issuance of the '291 and '627 patents' respective reexamination certificates.[1]  Accordingly, CF respectfully moves for summary judgment as to no pre-issuance damages and for absolute intervening rights.[2]

## II.   <u>STATEMENT OF FACTS</u>

Defendant's '291 and '627 patents relate to methods for repairing a broken interior door handle housing of an interior door panel on a door of a vehicle.   (Dkt. 94, para 30; Dkt 95, para 30).[3]  CF sells automotive parts over the internet, including Amazon and eBay.  Such parts include replacement door handles for the Jeep Grand Cherokee and Jeep Commander.  (Dkt. 94, para 43; Dkt 95, para 43).  Defendant has asserted to at least Amazon that CF's Jeep Grand Cherokee and Jeep Commander replacement door handle housings infringe the '291 and '627 patents.  (Dkt 94, para 11, 18 and 23; Dkt 95, para 11, 18 and 23).

The following undisputed facts conclusively demonstrate that CF is entitled to summary judgment as to no damages prior to issuance of the reexamination certificates.

### A.   Procedural History

On August 29, 2018, CF filed its complaint seeking a declaration of non-infringement of the

---

[1]      For the same reasons, CF's customers have no liability to Defendant for any purported infringement.

[2]      Defendant has not amended his infringement contentions to disclose any basis to assert that CF infringes any claims in the reexamination certificates of the '291 or '627 patents.

[3]      Reference to "Dkt. 94, para __ admitted in  Dkt. 95, para __" are to allegations in Plaintiff's Third Amended Complaint (Dkt. 94) that were admitted by Defendant in his Answer  (Dkt. 95).

'291 and '627 patents.  (Dkt. 1).  On September 28, 2018,  Ex Parte Requests for Reexamination of the '291 and '627 patents were filed with the USPTO.[4]  (Dkt. 94, para 32 and 43 admitted in Dkt 95, para 32 and 43).  On April 15, 2019, Defendant served "Patent Rules 2.2 Disclosure of Infringement Contentions" in this case.  (Ex. M).  In this Disclosure, Defendant contended that CF directly and indirectly infringed the '291 and '627 patents, and provided a claims chart setting forth Defendant's infringement contentions for <u>original</u> claims 1-6 of the '291 patent and <u>original</u> claims 1-5 of the '627 patent.  (See Ex. B attached to Ex M). On July 11, 2019, this Court stayed the case until the USPTO completed its reexaminations of the '291 and '627 patents. (Dkt. 44.). On January 23, 2020, the Court reopened this case.  (Dkt. 56).  On August 12, 2020, CF filed its Third Amended Complaint.  (Dkt. 94). Defendant filed its answer to the Third Amended Complaint on August 31, 2020.  (Dkt. 95).  Defendant has not amended its infringement contentions (Ex. M) since the USPTO issued the reexamination certificates for the '291 and '627 patents.

**B.        Reexamination of the '291 Patent**

The front page of the '291 patent bears an issue date ("Date of Patent") of September 8, 2015, and it contains one independent claim, claim 1.[5]  The '291 patent issued from application no. 13/532,661.  Claim 1 of the '291 patent that issued on September 8, 2015 recited the following:

> 1. A method for repairing a broken interior door handle
> housing on an interior door panel on a door of a vehicle, the
> broken interior door handle housing integrated into the interior
> door panel by a plurality of rivets, the interior door panel
> bearing at least one post extending from the interior door

---

[4]        A patent owner or third party may petition the USPTO to reexamine a patent's claims based on prior art that was not considered during the initial prosecution of the patent.  35 U.S.C. §§ 301, 302.  The independent claims of the '291 and '627 patents were determined by the USPTO to be unpatentable and thereafter the claims were substantively amended by the Defendant to overcome the prior art and emerge from the reexamination proceedings. See *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 742 (Fed. Cir. 1993) (after finding that independent claim 5 was substantively changed during reissue, the Court concluded that its conclusion also applied "with equal force to [dependent] claim 6 since the claim is dependent on claim 5").

[5]        Exhibit A is a copy of the '291 patent.  Exhibit B is a copy of the Reexamination Certificate for the '291 patent.  The exhibits to this motion are supported by the attached Declaration of John T. Polasek.

panel through a corresponding aperture in the broken interior
door handle housing, the method comprising:
removing the interior door panel from the door;
removing the broken interior door handle housing from the
interior door panel by removing the plurality of rivets
and detaching the broken interior door handle housing;
installing a replacement interior door handle housing on
the interior door panel such that the at least one post on
the interior door panel extends through an aperture in the
replacement interior door handle housing;
placing a retainer over the at least one post on the interior
door panel to press the replacement interior door handle
housing against the interior door panel; and
replacing the interior door panel on the door.

(Dkt. 94, para 31 admitted in Dkt 95, para 31; Ex. A).

On September 28, 2018, a Request for Ex Parte Reexamination of the '291 patent was filed

in the United States Patent and Trademark Office ("USPTO") and given application no.

90/014,211.  The Request asserted that there was a substantial new question of patentability as to

claim 1 (as well as dependent claims 2-6) in view of prior art not previously considered by the

USPTO during the examination of application no. 13/532,661.  On November 9, 2018, the USPTO

granted the request for ex parte reexamination of the '291 patent.  (Dkt. 94, para 32 admitted in

Dkt 95, para 32).

On February 4, 2019, the USPTO rejected claims 1-6 of the '291 patent as being obvious and

therefore unpatentable under 35 U.S.C Section 103(a).  (Dkt. 94, para 33 admitted in Dkt 95, para

33; Ex. N, pp. 4-9).

In March 2019, Thrasher filed a Response to the February 4, 2019 Office Action that added

new dependent claims for consideration by the USPTO.[6]  One such new dependent claim (claim

8) recited the limitation: "The method of claim 1 wherein placing a retainer over the at least one

---

[6]	In this Response, Defendant attempted to argue that his original claims were patentable without amending
the original claims; however, his argument was unpersuasive to the Examiner.  See Ex. F, p. 9.

post on the interior door panel includes pressing a push nut retainer down the post using one of a flat head screwdriver and a socket."[7]  This new claim was not recited in any of  claims 1-6 that issued in the '291 patent on September 8, 2015.  In the Response, Thrasher stated that a "push nut retainer" is "a type of fastener having internal serrations used to secure a device to an unthreaded shaft by pushing the retainer onto a non-threaded post."  (Dkt. 94, para 43 admitted in Dkt 95, para 43; Ex. E, pp. 3 and 10).

On April 18, 2019, the USPTO again rejected claim 1 (along with certain other claims) as obvious under 35 U.S.C. Section 103(a) in view of the prior art specified in the April 18, 2019 Office Action.[8]  The USPTO stated: "While a push nut retainer has been claimed in new claim 8, claim 1 merely requires 'placing a retainer over the at least one post on the interior door panel.'" (Ex F, p. 9).[9]  The Office Action indicated that new dependent claim 8 "[is] objected to as being dependent upon a rejected base claim but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims."  (Ex F, p. 10).  The

---

[7]     This limitation in new claim 8 was added during the during reexamination in Defendant's March 2019 Response to the February 4, 2019 Office Action.  (Ex. E, pp 3 and 10).

[8]     In the April 18, 2019 Office Action applying the prior art, the Examiner stated:

> As stated above, Ford Explorer teaches mounting a housing (in this case a window mechanism) on the interior on a vehicle door using posts (studs) and tabs and then retainers (nuts) to fasten the housing the housing in place. Ford Explorer further teaches replacing the interior door panel on the door. Ford Explorer deals with changing a window movement mechanism that is in a housing in the interior portion of the automobile door. Grand Cherokee YouTube shows the interior of a Jeep Cherokee door panel which is having the door handle housing replaced. The door panel has the interior door panel removed at the beginning of the video. The video shows rivets of the broken interior door handle housing being removed using a hand drill. .As such Grand Cherokee YouTube in combination with Ford Explorer is seen to demonstrate all of the claimed method steps. As such it would have been obvious to one of ordinary skill in the art that time of applicant's invention from the teaching of Grand Cherokee YouTube to modify Ford Explorer by replace a door handle housing on the interior of a vehicle door using tabs that already in place to provide a functioning door handle that is firmly positioned in the same position as the original.

(Ex F, p. 6; underlining added).

[9]     The Examiner's statement, including its use of the word "merely," makes a clear distinction in the substance of the scope of pending claim 8 and claim 1.

Office Action further stated: "The following is a statement of reasons for the indication of allowable subject matter: . . . Claim 8 specifies the use of a push nut retainer…" (Dkt. 94, para 35 admitted in Dkt 95, para 35; Ex F, p. 10).

On or about June 10, 2019, Thrasher submitted a Response to the Final Office Action, in which claim 1 was amended to include the limitations set forth in new claim 8.  (Ex G, p. 2). Thrasher's Response thanked the Examiner for indicating that new claim 8 would be allowable if rewritten in independent form that included all limitations of claim 1, and further stated:  "Patent Owner has amended Claim 1 to include the limitations of allowable Claim 8, and Claim 8 has been cancelled.  Accordingly Claim 1 and the claim dependent thereon are allowable." (Ex G, p.6).  This amendment was made to distinguish amended claim 1 over the prior art used by the USPTO to reject claim 1 of the '291 patent as it had issued on September 8, 2015.  (Dkt. 94, para 36 admitted in Dkt 95, para 36).

On June 27, 2019, the USPTO issued a communication that included a Notice of Intent to Issue Ex Parte Reexamination Certificate, including a statement of reasons for patentability that stated: "The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:  Claim 8 has been incorporated into claim 1.  Using a push nut retainer down a post on the interior door panel to press the replacement door handle housing against the interior door panel is not taught b[y] the cited prior art." (Dkt. 94, para 37 admitted in Dkt 95, para 37; Ex H, p. 2).

Claim 1 that issued in its amended form in the Ex Parte Reexamination Certificate on August 2, 2019 included claim language not present in claim 1 that issued in the '291 patent on September 8, 2015.  The amendment to claim 1 as amended in the Ex Parte Reexamination Certificate to include "placing a retainer over the at least one post on the interior door panel including pressing

a push nut retainer down the post using one of a flat head screwdriver and a socket" was made to

obtain allowance of claim 1 appearing in the '291 patent Reexamination Certificate.  (Dkt. 94, para

38 admitted in Dkt 95, para 38).

Amended claim 1 of the 291 Ex Parte Reexamination Certificate is not identical to claim 1

that issued on September 8, 2015, as shown in the italics that appear in claim 1 of the Ex Parte

Reexamination Certificate, which reads as follows:

> **1.** A method for repairing a broken interior door handle
> housing on an interior door panel on a door of a vehicle, the
> broken interior door handle housing integrated into the
> interior door panel by a plurality of rivets, the interior door
> panel bearing at least one post extending from the interior
> door panel through a corresponding aperture in the broken
> interior door handle housing, the method comprising:
> removing the interior door panel from the door;
> removing the broken interior door handle housing from
> the interior door panel by removing the plurality of
> rivets and detaching the broken interior door handle
> housing;
> installing a replacement interior door handle housing on
> the interior door panel such that the at least one post on
> the interior door panel extends through an aperture in
> the replacement interior door handle housing;
> placing a retainer over the at least one post on the interior
> door panel to press the replacement interior door handle
> housing against the interior door panel, *placing a
> retainer over the at least one post on the interior door
> panel including pressing a push nut retainer down the
> post using one of a flat head screwdriver and a socket;*
> and
> replacing the interior door panel on the door.

The language printed in italics in the preceding paragraph indicates additional claim language

added during the reexamination of the '291 patent.  (Dkt. 94, para 39 and 40 admitted in Dkt 95,

para 39 and 40).[10]

---

[10]    CF's accused products and the installation of the accused products do not include all of the
limitations of claim 1 as amended in the Ex Parte Reexamination Certificate of the '291 patent.  For example, CF's
accused products and the installation of the accused products do not include a "placing a retainer over the at least one

C.        Reexamination of the '627 Patent

The front page of the '627 patent bears an issue date ("Date of Patent") of August 29, 2017,

and it contains one independent claim, claim 1.[11]  The '627 patent issued from application no.

14/847,420.  Claim 1 of the '627 Patent that issued on August 29, 2017 recited the following:

> **1.** A method for repairing a broken interior door handle
> housing on an interior door panel on a door of a vehicle, the
> broken interior door handle housing integrated into the 15
> interior door panel by a plurality of rivets, the method
> comprising:
> removing the interior door panel from the door;
> removing the broken interior door handle housing from
> the interior door panel by removing the plurality of
> rivets and detaching the broken interior door handle
> housing to reveal a plurality of former rivet locations in
> the interior door panel;
> installing a replacement interior door handle housing
> having a plurality of apertures corresponding to at least
> some of the plurality of former rivet locations on the
> interior door panel;
> installing at least one screw through an aperture in the
> replacement interior door handle housing and into a
> former rivet location in the interior door panel to secure
> the replacement interior door handle housing against
> the interior door panel; and
> replacing the interior door panel on the door.

(Dkt. 94, para 42 admitted in Dkt 95, para 42).

On September 28, 2018, a Request for Ex Parte Reexamination of the '627 patent was filed

the USPTO and given application no. 90/014,212.   The Request asserted that there was a

substantial new question of patentability as to claim 1 (as well as dependent claims 2-5) in view

of prior art not previously considered by the USPTO during the examination of application no.

---

post" or "pressing a push nut retainer down the post using one of a flat head screwdriver and a socket" as required by
claim 1 of the Ex Parte Reexamination Certificate of the '291 patent.  The new claim limitation that was added to
claim 1 in the Reexamination Certificate of the '291 patent is completely absent in the accused products and the
method of installation of the accused products.

[11]       Exhibit C is a copy of the '627 patent that issued on August 29, 2017.   Exhibit D is a copy of the
Reexamination Certificate of the '627 patent that issued on August 6, 2019.

14/847,420.  On November 7, 2018, the USPTO granted the request for ex parte reexamination of the '627 patent. (Dkt. 94, para 43 admitted in Dkt 95, para 43).

On February 4, 2019, the USPTO rejected claims 1-5 of the '627 patent as being obvious and therefore unpatentable under 35 U.S.C Section 103(a).  (Dkt. 94, para 44 admitted in Dkt 95, para 44; Ex. O, pp. 4-6).

In March 2019, Thrasher filed a Response to the February 4, 2019 Office Action that added new dependent claims.[12]  One such new dependent claim (new dependent claim 10) recited the limitation: "The method of Claim 1 further comprising removing and reusing a handle lever of a door handle of the broken interior door handle housing."  This new limitation was not recited in any of claims 1-5 that issued in the '627 patent on August 29, 2017.  In the Response, Thrasher stated that "Claims 6-12 are new."  (Ex I, p. 5). (Dkt. 94, para 45 admitted in Dkt 95, para 45).

On April 18, 2019, the USPTO again rejected claim 1 (along with certain other claims) as obvious under 35 U.S.C. Section 103(a) in view of the prior art specified in the April 18, 2019 Office Action.  The USPTO indicated that new dependent claim 10 "[is] objected to as being dependent upon a rejected base claim but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims."  (Ex J, p. 9).  The Office Action further stated: "The following is a statement of reasons for the indication of allowable subject matter: Claims 10-12 require the removal and reuse of the lever handle from the broken interior door handle housing…" (Dkt. 94, para 46 admitted in Dkt 95, para 46; Ex. J, p. 9).

On or about June 10, 2019, Thrasher submitted a Response to the Final Office Action cancelling pending claim 10 and amending claim 1 to include the additional limitation of "removing and reusing a handle lever of a door handle that was positioned within the broken

---

[12]      Defendant attempted to argue that his original claims were patentable without amending the original claims; however, his argument was unpersuasive to the Examiner.  See Ex. J, p. 7.

interior door handle housing before the broken interior door handle housing was removed.".  (Ex K, p. 2).  Thrasher's Response thanked the Examiner for indicating that new claim 10 would be allowable if rewritten in independent form that included all limitations of claim 1, and it further stated:  "Patent Owner has amended Claim 1 to include the limitations of allowable Claim 10, and Claim 10 has been cancelled.  Note that Claim 1 is further limited to clarify that the handle lever of the door handle that is reused is the same one that was positioned within the broken interior door handle housing before the broken interior door handle housing was removed.  Accordingly Claim 1 and the claims dependent thereon are allowable." (Ex K, pp. 5-6).  This amendment was made to distinguish amended claim 1 over the prior art used by the USPTO to reject claim 1 as it had issued on August 29, 2017.  This amendment "further limited" claim 1 in the '627 Patent. (Dkt. 94, para 47 admitted in Dkt 95, para 47).

On June 28, 2019, the USPTO issued a communication that included a Notice of Intent to Issue Ex Parte Reexamination Certificate with a statement of reasons for patentability that stated: "The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding: Claim 1 has been amended to incorporate claim 10, specifically to require the removal and reuse of the lever handle from the broken interior door handle housing…." (Dkt. 94, para 48 admitted in Dkt 95, para 48; Ex. L, p. 3).

Claim 1 that issued in its amended form in the Ex Parte Reexamination Certificate on August 6, 2019 included a new limitation not present in claim 1 that issued in the '627 patent on September August 29, 2017.  The amendment to claim 1 as amended in the Ex Parte Reexamination Certificate to include "removing and reusing a handle lever of a door handle that was positioned within the broken interior door handle housing before the broken interior door handle housing was removed"

was made to obtain allowance of claim 1 appearing in the Reexamination Certificate of the '627

patent.  (Dkt. 94, para 49 admitted in Dkt 95, para 49).

Amended claim 1 of the '627 Ex Parte Reexamination Certificate is not identical to claim 1

that issued on August 29, 2017, as shown in the italics that appear in claim 1 of the Ex Parte

Reexamination Certificate, which reads as follows:

> **1.** A method for repairing a broken interior door handle
> housing on an interior door panel on a door of a vehicle, the
> broken interior door handle housing integrated into the 15
> interior door panel by a plurality of rivets, the method
> comprising:
> removing the interior door panel from the door;
> removing the broken interior door handle housing from
> the interior door panel by removing the plurality of
> rivets and detaching the broken interior door handle
> housing to reveal a plurality of former rivet locations in
> the interior door panel;
> installing a replacement interior door handle housing
> having a plurality of apertures corresponding to at least
> some of the plurality of former rivet locations on the
> interior door panel;
> installing at least one screw through an aperture in the
> replacement interior door handle housing and into a
> former rivet location in the interior door panel to secure
> the replacement interior door handle housing against
> the interior door panel; [and]
> replacing the interior door panel on the door; *and*
> *removing and reusing a handle lever of a door handle that*
> *was positioned within the broken interior door handle*
> *housing before the broken interior door handle housing*
> *was removed.*

The language printed in italics in the preceding paragraph indicates additional claim language

added during the reexamination of the '627 patent.  (Dkt. 94, para 50-51 admitted in Dkt 95, para

50-51).[13]

---

[13]      CF's accused products and the installation of the accused products do not include all of the limitations
of claim 1 as amended in the Ex Parte Reexamination Certificate of the '627 patent.  For example, CF's accused
products include a new door handle lever, and installation of the products does not include removal and reuse of the
handle lever of the door handle panel that was broken.  The new claim limitation that was added to claim 1 in the

## III.    LEGAL PRINCIPLES

### A.    Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mitsubishi Heavy Indus. v. GE*, 2012 U.S. Dist. LEXIS 92826, * 9-10 (M.D. Fla., July 5, 2012). The application of 35 U.S.C. § 252 is a question of law, and summary judgment may be properly granted to preclude liability for conduct that predates the date of the reexamination certificate. *See Fortel Corp. v. Phone-Mate, Inc.,* 825 F.2d 1577 (Fed. Cir. 1987); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998); *Westvaco Corp.*, 991 F.2d at 741; and *Irrevocable Trust of Antonious v. Roger Cleveland Golf Co.*, 2011 U.S. Dist. LEXIS 164618, *4 (C.D. Cal., Jan. 11, 2011).

### B.    Substantive Amendments Bar Pre-Issuance Damages and Trigger Absolute Intervening Rights

#### 1.    Pre-issuance damages

If a patent owner amends the claims during reexamination, he is not entitled to damages prior to the issue date of the reexamination certificate ("pre- issuance damages") unless the original <u>and</u> reexamined claims are "substantially identical."  35 U.S.C. §§ 252, 307(b)[14]; *Fortel Corp.* 825 F.2d at 1579.

---

Reexamination Certificate of the '627 patent is completely absent in the accused products and the method of installation of the accused products.

[14]    35 U.S.C. § 252 discusses reissue patents, while 35 U.S.C. § 307(b) extends these rights to reexamined patents. *Fortel Corp.,* 825 F.2d at 1579 (citing H.R. Rep. No. 1307, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S. Code. Cong. & Admin. News 6460, 6467 for "Thus, a person practicing a patented invention would not be considered an infringer for the period between issuance of an invalid patent and its conversion through reexamination to a valid patent.") *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1377-78 (Fed. Cir. 2017) ("An owner of a patent that survives reexamination is not entitled to infringement damages for the time period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and amended claims are not 'substantially identical.'"); *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 829-30 (Fed. Cir. 1984) ("With respect to new or amended claims, an infringer's liability commences only from the date the [reexamination certificate] is issued.").

## 2.      Absolute intervening rights

Further, pursuant to the first sentence of the second paragraph of § 252, absolute intervening rights entitle CF "to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the <u>specific thing</u> so made, purchased, offered for sale, used, or imported" prior to the issuance of the reexamination certificate. 35 U.S.C. §§ 252, 307(b). "The statute uses the term 'the specific thing' to refer to the tangible article which qualifies for absolute intervening rights. This 'specific thing' terminology suggests that the tangible article was in existence before the [reexamination certificate] date." *Shockley v. Arcan*, 248 F.3d 1349, 1359-60 (Fed. Cir. 2001). "In other words, it covers products already made at the time of [the reexamination certificate]." *BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1221 (Fed. Cir. 1993)

## 3.      "Substantially identical" claims

Reexamined claims are "substantially identical" to original claims only if the scope before and after amendment is identical. *R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1349 (Fed. Cir. 2015) ("To determine whether substantive changes have been made, we consider 'whether the scope of the claims are identical, not merely whether different words are used.'") (quoting *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998)); *Seattle Box Co.*, 731 F.2d 818, 829-30 (Fed. Cir. 1984) (adding "substantially equal to or" to claims which recite "greater than the thickness of the tier of pipe lengths" is a substantive amendment). The patentee's intent in making the amendment is irrelevant to whether the amendment changed the claim scope. *R&L Carriers*, 801 F.3d at 1350.

Amending the claims to overcome a prior art rejection during reexamination is "a highly influential piece of prosecution history," and it is "difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed

by the amendment." *Laitram*, 163 F.3d at 1348. In such situations, the patentee bears a "heavy burden of showing that, notwithstanding the alteration in the claim language based on the examiner's prior art rejection, the change made to the claims during reexamination had no effect on their scope." *Sonos, Inc. v. D&M Holdings Inc.*, 2017 U.S. Dist. LEXIS 201281, *13-*14 (D. Del. Dec. 7, 2017) (Federal Circuit Judge Bryson, sitting by designation).

Whether the scope of a reexamined claim is identical to the scope of the original claim is <u>a question of law</u>. *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 741 (Fed. Cir. 1993). In considering whether the claims were narrowed in reexamination, "the court should determine whether there is any product or process that would infringe the original claim, but not infringe the amended claim." *R+L Carriers*, 801 F.3d at 1350 (emphasis added). "To determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Laitram*, 163 F.3d at 1347.

## IV.   SUBSTANTIVE CLAIM AMENDMENTS PRECLUDE LIABILITY PRIOR TO ISSUANCE OF THE REEXAMINATION CERTIFICATES

The determination of whether a reexamined claim is "substantially identical" to its original claim is a matter of law.  See *Laitram*, 163 F.3d at 1346 and *Irrevocable Trust of Antonious*, 2011 U.S. Dist. LEXIS 164618, *4.  Defendant made substantive changes to the claims of the '291 and '627 patents to overcome the invalidating prior art cited in the Examiner's rejections. A plain reading of the additional limitations added to the claims leads to the inescapable conclusion that the amendments narrowed the scope of the original independent claims. Moreover, Defendant's own words during the reexamination prosecution confirm this conclusion. Defendant's statements made during the reexaminations are consistent with the Examiner's expressed reasons for allowance.  Furthermore, Defendant has admitted in its Answer (Dkt. 95) that the new limitations

added to the claims were not recited in the original claims and that the amendments were made to distinguish the amended claims over the prior art that was used to reject the original claims.  (Dkt. 94, para 36, 38, 47 and 49 admitted in Dkt. 95, para 36, 38, 47 and 49).

**A.    Defendant Substantively Amended The Claims Of Each Patent During Reexamination**

Because Defendant amended the independent claims of each asserted patent during reexamination to overcome the prior art rejections, and exclude the prior art, Defendant cannot recover pre-issuance damages.

**1.    Defendant Substantively Amended Claim 1 of the '291 Patent**

During reexamination of the '291 patent, Defendant amended the only independent claim (claim 1) to add as an additional limitation, the step of "*placing a retainer over the at least one post on the interior door panel including pressing a push nut retainer down the post using one of a flat head screwdriver and a socket*." This amendment, on its face, changed the scope of the claim. The original claim 1 of the '291 patent was broader and covered placing a <u>generic</u> retainer over the post <u>without imposing a requirement of the type of tool used</u>:  "placing a retainer over the at least one post on the interior door panel…."  After the amendment in reexamination to avoid the cited prior art, the amended claims were narrowed to cover only the step of placing a <u>push nut retainer</u> (which Defendant explained to the Examiner is a type of fastener having internal serrations) down the post (and) <u>by using a flathead screwdriver or socket</u>. Put differently, prior to reexamination, none of the patent claims were limited to the type of retainer or tool used to push the retainer down the post.  The Examiner emphasized the difference in claim scope: "[w]hile a push nut retainer has been claimed in new claim 8, claim 1 <u>merely</u> requires 'placing a retainer over the at least one post on the interior door panel.'" (Ex F, p. 9 to Dkt. 94).  The Office Action further stated: "The following is a statement of reasons for the indication of allowable subject matter: . . .

Claim 8 <u>specifies</u> the use of a push nut retainer…" (Dkt. 94, para 35 admitted in Dkt 95, para 35; Ex F, p. 10 to Dkt 94). Prior to reexamination, any retainer placed over the post with any tool could meet the limitation. However as explained below, to distinguish prior art, Defendant amended claim 1 to specifically require pressing a push nut with a flathead screwdriver or socker. No longer could the claims read on a method using any other retainer or tool.

Defendant entered the amendments that narrowed claim 1 of the '291 patent during reexamination to overcome prior art. In the February 4, 2019 Office Action, the Examiner made clear that claim 1 that had issued in the '291 patent (and each of the patent's dependent claims) were unpatentable, stating with respect to claim 1 that it was "rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Grand Cherokee YouTube in view of Ford Explorer" and "unpatentable over Ford explorer in view of Grand Cherokee YouTube." (Ex N, pp. 4-6).

In response, in March 2019, Defendant attempted to persuade the Examiner through argument that the claims of the '291 were patentable over the prior art; however as a fallback, the Defendant added several new dependent claims (that depended from claim 1), including new claim 8. Defendant stated his belief that "Ford Explorer does not disclose or suggest using a push nut retainer, which is a type of fastener having internal serrations used to secure a device to an unthreaded shaft simply by pushing the retainer onto a non-threaded post" and argued that therefore the prior art failed to teach or suggest the "placing a retainer over the at least one post…" limitation in claim 1. (Ex. E, pp. 10-11). With regard to the new claims (which includes new claim 8) that Defendant submitted to the USPTO, he stated "these claims recite <u>additional features</u> not disclosed or suggested by the cited references." (Ex. E, p. 15; underlining added).

However, the USPTO was unpersuaded by Defendant's arguments that original claim 1 was patentable: "Applicant's arguments filed March 25, 2019 have been fully considered but they are

not persuasive."  The Examiner maintained its rejection that claim 1 was unpatentable over the

cited prior art (Ex. F, pp. 4-6) and distinguished the broader term "retainer" from the narrower

phrase "push nut retainer" in new claim 8 (which became claim 1 in the Reexamination

Certificate):

> Applicants arguments . . . have been fully considered but they are not persuasive. Patent owner (PO) states that the references do not disclose placing a retainer over the at least one post on the interior door panel to press the replacement interior door handle housing against the door panel.  Grand Cherokee YouTube shows posts and tabs used to position a door handle housing in place on a door liner.  Ford Explorer attaches the replacement part with studs and tabs as well as attachment nuts and either rivets or another set of nut and washer assemblies.  PO states that Ford explorer "does not disclose or suggest using a push nut retainer, which is a type of fastener having internal serrations used to secure a device to an unthreaded shaft simply by pushing the retainer onto a non-threaded post." <u>While a push nut retainer has been claimed in new claim 8, claim 1 merely requires "placing a retainer over the at least one post on the interior door panel."</u>  A nut is a retainer and the language is not means-plus-function that would require a retaining means as disclosed in the specification.  The YouTube reference discloses tabs and posts on the door interior and Ford Explorer discloses the use of retainers. . . .

> Claims 5 and 8-13 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

> The following is a statement of reasons for the indication of allowable subject matter: … <u>Claim 8 specifies the use of a push nut retainer</u>…

(Ex. F, pp. 9-10; underlining added)

Thereafter, on June 10, 2019, Defendant complied with the Examiner's instruction by

amending claim 1 to include the more restrictive limitations in new claim 8, and stated "Patent

Owner has amended Claim 1 to include the limitations of allowable Claim 8, and Claim 8 has been

cancelled." (Ex. G, pp. 3 and 7).[15]  On June 27, 2019, the Examiner issued a Statement of Reasons

---

[15]      Defendant further acknowledged the Examiner's reasons for allowance, indicating that he "takes no position regarding the reasons for allowance presented by the Examiner other than the positions that Patent Owner may have previously taken during reexamination."  However, Defendant's reason for the amendment that he made to the claim scope is irrelevant.  *R+L Carriers*, 801 F.3d at 1350 ("[I]t is irrelevant why an amended claim is narrowed during reexamination, or even whether the patentee intended to narrow the claim in a particular way.")  What matters is that there was substantive amendment to the claim.

for Patentability: "Claim 8 has been incorporated into claim 1.  Using a push nut retainer down a post on the interior door panel to press the replacement door handle housing against the interior door panel is not taught be the cited prior art."  (Ex H, p. 2).  This record establishes that the amendment made to narrow the scope of original claim 1 was made to overcome the prior art cited by the Examiner in the Examiner's rejection.  An amendment to overcome a prior art rejection is a "highly influential piece of prosecution history" according to the Federal Circuit.  *Laitram*, 163 F.3d at 1348.  It is "difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment." *Id*.

### 2.  Defendant Substantively Amended Claim 1 of the '627 Patent

In a similar fashion, during reexamination of the '627 patent, Defendant amended the claims to recite "*removing and reusing a handle lever of a door handle that was positioned within the broken interior door handle housing before the broken interior door handle housing was removed.*" This amendment changed the scope of the original independent claim 1. The original claim of the '627 patent was broader and covered both replacement with a new handle lever of a door handle and reuse of a handle lever of a door handle. After the amendment in reexamination to avoid the cited prior art, the amended claims were narrowed to cover only the step of reusing a handle lever of a door handle. Put differently, prior to reexamination, none of the patent claims were limited to reusing the door lever: the lever could be new or the lever from the broken housing. The Defendant explained the difference <u>in claim scope</u> to the Examiner:  "Note that Claim 1 is <u>further limited</u> to clarify that the handle lever of the door handle that is reused is the same one that was positioned within the broken interior door handle housing before the broken interior door handle housing was removed."  (Dkt. 94, para 47 admitted in Dkt 95, para 47).

Prior to reexamination, use of any door lever could meet the limitation. However as further

explained below, Defendant amended claim 1 to specifically require reuse of the handle lever from the broken housing to distinguish the prior art.   In the February 4, 2019 Office Action, the Examiner made clear that claim 1 in the '627 patent (and each of the patents dependent claims) were unpatentable, stating with respect to claim 1 that it was "rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Grand Cherokee YouTube in view of Denlors." (Ex. O, pp. 4).

On March 13, 2019, Defendant responded to this Office Action attempting to persuade the Examiner through argument that the claims of the '627 were patentable over the prior art; however as a fallback, the Defendant added several new dependent claims (that depended from claim 1), including new claim 10.  Regarding the new claims (which includes new claim 10) that Defendant submitted to the USPTO, Defendant stated "these claims recite additional features not disclosed or suggested by the cited references." (Ex. I, pp. 4 and 14).

The USPTO was unpersuaded by Defendant's argument regarding claim 1 and maintained its rejection of claim 1 over the prior art.  (Ex. J, pp. 4, 5, and 7).  The Examiner indicated that the additional limitation in claim 10, if incorporated into claim 1, would be allowable:

> Claims 10-12 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.
>
> The following is a statement of reasons for the indication of allowable subject matter: … Claim 10-12 require the removal and reuse of the lever handle from the broken interior door handle housing….

(Ex. J, p. 9, underlining added).

Thereafter, on June 10, 2019, Defendant complied with the Examiner's instruction by amending claim 1 to include the more restrictive limitations in new claim 10, stating "Patent Owner has amended Claim 1 to include the limitations of allowable Claim 10, and Claim 10 has been cancelled.  Note that Claim 1 is further limited to clarify that the handle lever of the door handle

that is reused is the same one that was positioned within the broken interior door handle housing before the broken interior door handle housing was removed.  Accordingly, Claim 1 and the claims dependent thereon are allowable." (Ex K, pp. 3 and 6-7; underlining added).

On June 28, 2019, the Examiner issued a Statement of Reasons for Patentability: "Claim 1 has been amended to incorporate claim 10, specifically to require the removal and reuse of the lever handle from the broken interior door handle housing.  Grand Cherokee Youtube shows the removal of the handle housing, but does not show the removal of the handle or any reassembly or reattachment.  DoItYourself.com and Denlors teach the removal and replacement of broken door handles using sheet metal screws to attach replacement handles."  (Ex L, p. 3; underling added). This record establishes that the amendment made to narrow the scope of original claim 1 was made to overcome the prior art cited by the Examiner.  This highly influential prosecution history confirms that Defendant substantively changed the scope of original claim 1 of the '627 patent. *Laitram*, 163 F.3d at 1348.

### B.      Plaintiff Has No Liability To Defendant For Actions Prior to Issuance Of The Reexamination Certificate

Courts consistently conclude that limitations serving to narrow the claim scope are substantive. For example, in *R+L Carriers*, the Federal Circuit affirmed the district court's determination that absolute intervening rights applied because the patentee added new limitations that modified the original claim language to avoid prior art cited in reexamination. *R+L Carriers*, 801 F.3d at 1351.  In *Laitram*, the Federal Circuit agreed that the plain reading of the original and reexamined claims indicated they were of different scope.  *Laitram*, 163 F.3d at 1348.   In *Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, 864 F. Supp. 2d 1328, 1340 (S.D. Fla. 2012),  the court concluded that the patentee substantively changed the claims, making the claim narrower, when it added "logically directly" to overcome the prior art. Additional court decisions have consistently applied

these principles.  See for example, *Sonos*, 2017 U.S. Dist. LEXIS 201281, at *12 (added limitations

in response to rejections during reexamination narrowed claim scope); *MonoSol RX, LLC v.*

*Biodelivery Scis. Int'l, Inc.*, 2015 U.S. Dist. LEXIS 128870, *64 (D. N.J. Sept. 25, 2015) (finding

amendments to the claims in reexamination constituted substantive changes); *InTest Corp. v. Reid-*

*Ashman Mfg., Inc.*, 66 F. Supp.2d 576, 585 (D. Del. 1999) (concluding that an amendment that

narrowed the claim during reexamination substantively changed the scope of the original claim);

*Irrevocable Trust of Antonious*, 2011 U.S. Dist. LEXIS 164618, *4 (granting summary judgment

upon finding that the reexamined claims were not "substantively identical" to the original claims);

and *Kim v. Earthgrains Co.*, 451 Fed. App'x 922, 925 (Fed. Cir. 2011) ("Why, if the claims are of

identical scope, did [the patentee] amend them?).[16]

Because none of the amended claims of the asserted patents are substantially identical to the

original claims, CF  (and its customers) has no liability, as a matter of law, to Defendant for any

acts of purported infringement before the issue dates of the reexamination certificates. 35 U.S.C.

§§ 252, 307(b); *Seattle Box Co.*, 731 F.2d at 829-30 ("With respect to new or amended claims, an

infringer's liability commences only from the date the [reexamination certificate] is issued.);

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1377-78 (Fed. Cir. 2017);

and *Irrevocable Trust of Antonious*, 2011 U.S. Dist. LEXIS 164618, *4.  In other words, the

Examiner found all of the original claims of the '291 and '627 patents to be unpatentable, and CF

cannot be liable for infringement of the original unpatentable claims. As such, CF (and its

customers) has no liability to Defendant for alleged infringement occurring prior to the issuance

---

[16]        The only way the reexamined claims can be substantially identical to the original claims is if the
amendments were already inherent in the claims. At no time during the reexaminations did Defendant argue that his
amendments were non-substantive or unnecessary to distinguish the prior art. On the contrary, Defendant's remarks
to the examiner establish the opposite. Thus, Defendant cannot credibly argue that the additional claim limitations
added to claim 1 in both reexamination certificates for the '291 and '627 patents merely clarify something inherent in
the original claims.

of the reexamination certificates.

### C.    Absolute Intervening Rights Limit Defendant's Damages Post-Issuance

Moreover, under the doctrine of absolute intervening rights, CF is entitled "to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the underline specific thing so made, purchased, offered for sale, used, or imported" prior to the issuance of the reexamination certificate. 35 U.S.C. §§ 252, 307(b).  The "specific thing" is any door handle replacement kit that was in existence prior to the issuance of the reexamination certificates of the '291 and '627 patents. *BIC Leisure Prods.*, 1 F.3d 1214, 1221 (Fed. Cir. 1993) ("In other words, it covers products already made at the time of [the reexamination certificate].")[17] In *BIC Leisure*, the Federal Circuit held that absolute intervening rights applied to the defendant's products in inventory, and products on order before the issuance of the reexamination certificate. *Bic Leisure*, 1 F.3d at 1222. Here, Defendant has identified certain of CF's Jeep Grand Cherokee and Jeep Commander replacement door handle kits that infringe the '291 and '627 patents. CF and its customers have no liability to Defendant for any kits made, purchased, offered for sale, imported, or used prior to the issuance of the reexamination certificates.

## V.    <u>CONCLUSION</u>

Defendant made narrowing amendments to the independent claims of the '291 and '627 patents to overcome the USPTO's rejections based on invalidating prior art references. For the reasons above, CF requests, pursuant to 35 U.S.C. §§ 252 and 307(b), that the Court grant CF's motion for  summary judgment with respect to the '291 and '627 patents and order that any of CF's Jeep Grand Cherokee and Jeep Commander door handle replacement kits that were made,

---

[17]      Absolute intervening rights applies to apparatus and method claims because this defense extends to the "specific thing" that was made, purchased, offered for sale, used, or imported before the issuance of the reexamination certificate. *Infinity Comput. Prods. V. Toshiba Am. Bus. Sols., Inc.*, 2019 U.S. Dist. LEXIS 28886 (E.D. Pa., Feb. 22, 2019).

purchased, offered to sell, or used within the United States, or imported into the United States, prior to August 2, 2019 may not be the basis for infringement of the '291 patent; and any of CF's Jeep Grand Cherokee and Jeep Commander door handle replacement kits that were made, purchased, offered to sell, or used within the United States, or imported into the United States, prior to August 6, 2019 may not be the basis for infringement of the '627 patent.

Respectfully submitted,

Date:   October 27, 2020

*/s/ John T. Polasek*
Mark Goldstein
FL Bar No. 882186
markgoldsteinattorney@gmail.com
1835 NE Miami Gardens Drive, Suite 211
Miami, Florida 33179
Telephone: (305) 342-4839

John T. Polasek (admitted *pro hac vice*)
Elliott & Polasek, PLLC
ted@epiplawyers.com
6750 West Loop South, Suite 995
Bellaire, Texas 77401
Telephone: 832-485-3560

*Counsel for Plaintiff CF Advance, Corp.*

## CERTIFICATE OF SERVICE

I certify that on October 27, 2020, I electronically filed a copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of the electronic filing to:

Andrew S. Rapacke, Esq,
andy@arapackelaw.com,
THE RAPACKE LAW GROUP, P.A.
1836 North Pine Island Road,
Plantation, Florida 33322-5202

By:  */s/ Tari Martin*